IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DAIRY FARMERS OF AMERICA, INC.**,

        Plaintiff,

v.                                                    Case No. 2:20-CV-02490

**FOREMOST FARMS USA, COOPERATIVE**,

        Defendant.

## DEFENDANT FOREMOST FARMS USA, COOPERATIVE'S REPLY IN SUPPORT OF ITS MOTION TO STAY, DISMISS, OR TRANSFER

Defendant Foremost Farms USA, Cooperative ("Foremost") hereby submits the following reply brief in support of its motion to stay (Dkt. 5) the above-captioned case (the "Kansas Action") pending resolution of a fully briefed motion concerning the issue of venue in a previously filed parallel proceeding between the parties in the United States District Court for the Western District of Wisconsin (the "Wisconsin Action"). *See Foremost Farms USA, Cooperative v. Dairy Farmers of America, Inc.*, No. 3:20-CV-911 (W.D. Wis.). Absent a stay, Foremost moves for dismissal of the Kansas Action pursuant to Rule 12(b)(3) and (6) of the Federal Rules of Civil Procedure or, alternatively, for the transfer of the Kansas Action to the Western District of Wisconsin pursuant to 28 U.S.C. § 1404(a).

As a preliminary matter, Plaintiff, Dairy Farmers of America, Inc. ("DFA") "acknowledges that a brief stay of this matter is proper until the Western District of Wisconsin decides DFA's Motion to Dismiss in that court." (DFA's Opposition Br., Kansas Action, Dkt. 9, at 3). Therefore, because DFA does not oppose Foremost's motion to stay, such motion should be granted for the reasons stated in Foremost's opening brief. (Kansas Action, Dkt. 6). If this Court, however, were to decide the issue of venue notwithstanding the parties agreeing that a

stay is appropriate, then the Kansas Action should be dismissed under the first-to-file rule, or, alternatively, transferred under 28 U.S.C. § 1404(a) to the Western District of Wisconsin.

**I.    Analysis of the 28 U.S.C. § 1404(a) Factors Confirms that this Case Belongs in Wisconsin.**

Wisconsin serves as the appropriate venue for litigation of this dispute.  Contrary to DFA's insinuations, Foremost's filing of the Wisconsin Action did not constitute "procedural fencing" or "forum-shopping."  Rather, Foremost selected the Western District of Wisconsin as venue for litigation of its claims because (1) of the convenience of the witnesses and parties, who primarily are located in Wisconsin, (2) of the fact that travel in the current pandemic is difficult at best and the proximity to the witnesses to that court will both best serve the witnesses and limit logistical issues for the Court, thus aiding the pursuit of an expedient resolution of the matter, (3) of the fact that the relevant evidence and sources of proof regarding the disputed issues predominantly are located in Wisconsin, (4) the substantive law of Wisconsin governs interpretation of two out of the three contracts subject to the claims in the Wisconsin Action, with the remaining claim governed by Missouri – not Kansas – law, (5) Foremost is most akin to a "natural plaintiff" under the circumstances of this dispute, and (6) the interests of justice all support venue in Wisconsin.

**A. Convenience of the Witnesses – the Most Important Factor in the Venue Analysis – Weighs Strongly in Favor of Transfer.**

DFA's opposition brief, tellingly, ignores Foremost's extensive arguments and factual context establishing Wisconsin as the most appropriate venue for litigation of this dispute, (*See* Kansas Action, Dkt. 6, at 10-17), including Foremost's arguments regarding convenience of the witnesses, which in the Tenth Circuit is "the single most important factor in deciding a motion to

transfer."[1]  *Cobalt Iron v. Bit Lasso, LLC*, No. 2:17-cv-02196, 2017 U.S. Dist. LEXIS 143867, at *8 (D. Kan. Sept. 6, 2017) (J. Robinson) (applying first-to-file rule) (citing *Emplrs. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010)).  Instead, DFA identifies witnesses irrelevant to the disputed issue in the Wisconsin and Kansas Litigations.[2]  Namely, DFA noted that unidentified members of DFA's finance, management, and accounting teams work in Kansas and purportedly are likely witnesses on the subject of damages for breach of any of the three contracts at issue.   Such individuals are red herrings; in this litigation, the sole disputed issue is whether Foremost's performance under the three Supply Agreements is excused; not the amount of damages if DFA prevails on this issue.  Therefore, the finance, management, and accounting team witnesses DFA alludes to in its brief are not material witnesses in this litigation, thus they do not merit consideration on the convenience of the witnesses factor.

DFA also erroneously attempts to argue that Foremost did not satisfy its burden of proving witness inconvenience by "(1) identifying witnesses and their locations; (2) indicating the materiality of their testimony; and (3) showing that the witnesses are unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary."  *Cobalt Iron*, 2017 U.S. Dist. LEXIS 143867, at *8 (citing *Emplrs. Mut. Cas. Co.*, 618 F.3d at 1168).  Foremost, however, has indeed met its burden on all three elements.  Foremost has identified key witnesses involved in the formation of the Supply

---

[1] The ongoing COVID-19 pandemic amplifies the primacy of the "convenience of the witnesses" factor, as keeping venue in Wisconsin minimizes the overall number of witnesses who may be required to travel long distances in the event the pandemic remains ongoing when the trial date arrives.  This may prove especially significant considering pandemic-related travel restrictions and flight reductions by airlines.
[2] DFA does not identify a single material witness by name that it claims resides in the District of Kansas. (*See* Kansas Action, Dkt. 9, at 7) (making references to unidentified finance, management, and accounting team members, as well as Joseph Brinker, who is not identified as residing in the District of Kansas).

Agreements who are located in Wisconsin, indicated the materiality of such witnesses' testimony to the disputed issue of excused non-performance of the Supply Agreements, and shown that it does not have control over securing the testimony of every such witness. (*See* Kansas Action, Dkt. 6, at 11-13) (identifying likely witnesses Hanson, Belk, Martens, Briggs, and Burke in Wisconsin, Elliott, in Indiana, and Turcinov in Ohio, as well as additional witnesses consisting of (1) current and former employees at Foremost Farms' plants in Reedsburg, Marshfield, and Clayton, Wisconsin, (2) Wisconsin state and local government officials who may most knowledgeably testify about government actions in response to the pandemic in Wisconsin, and (3) Wisconsin business leaders or economists who may most knowledgeably testify about the economic impact and effects of the pandemic in Wisconsin and on the dairy industry there).

On the other hand, DFA fails to identify by name a single witness residing in Kansas with knowledge material to a disputed issue. On "the single most important factor in deciding a motion to transfer," DFA failed to identify a single material witness supporting venue in the District of Kansas. *See Cobalt Iron v. Bit Lasso, LLC*, No. 2:17-cv-02196, 2017 U.S. Dist. LEXIS 143867, at *8. For this reason alone, this case belongs in Wisconsin.

**B. DFA Fails to Contest that the Accessibility of Other Sources of Proof Weighs in Favor of Venue in Wisconsin.**

In addition to failing to name a single witness residing in Kansas with knowledge regarding a disputed material issue, DFA fails to contest that the location of other sources of proof in this case are also in Wisconsin. The section 1404(a) factors include "the accessibility of . . . other sources of proof." *Boilermakers Nat'l Health & Welfare Trust v. Steele*, No. 09-2329, 2010 U.S. Dist. LEXIS 54586, at *19 (D. Kan. June 2, 2010) (J. Robinson) (citation omitted). Foremost discussed in detail in its memorandum specific types of material evidence located in Wisconsin relevant to the substantive issues in this case. (Kansas Action, Dkt. 6, at 11-13).

4

DFA neither disputes Foremost's description of the applicable other sources of proof and their location in Wisconsin, nor does DFA identify any material sources of proof in Kansas. This factor weighs strongly in favor of transfer to the Western District of Wisconsin.

This dispute concerns three milk supply contracts to be performed in four locations; three located in the Western District of Wisconsin and one located in the neighboring state of Michigan. (Kansas Action, Dkt. 1, ¶¶ 7-11; Wisconsin Action, Dkt. 1, ¶¶ 9, 18-20). In brief, Foremost asserts that its performance under the three contracts is excused under Section 13 of the Greenville Contract, and under the common law doctrines of commercial impracticability and frustration of purpose, based on events including (1) the COVID-19 pandemic; (2) the government restrictions in response to the COVID-19 pandemic; and (3) the national and local economic conditions resulting from the COVID-19 pandemic. (Wisconsin Action, Dkt. 1, ¶¶ 30-32). Assessment of Foremost Farms' claims necessarily will focus on witnesses located in, and events that occurred in, Wisconsin. Conversely, this dispute has little, if any, connection to Kansas. The only basis for venue that DFA alleges is that DFA is headquartered in Kansas, and that some employees with knowledge of an undisputed issue work in Kansas. (Kansas Action, Dkt. 1, ¶ 6; Dkt. 9). None of the Supply Agreements at issue involved the supply, delivery, or processing of milk in Kansas. To the contrary, DFA has members in the Western District of Wisconsin who produced milk that DFA supplied to Foremost in the Western District of Wisconsin; DFA contracts with Western District of Wisconsin companies, and DFA delivers milk to residents of the Western District of Wisconsin. (Wisconsin Action, Dkt. 1, ¶ 9; Kansas Action, Dkt. 6-1, ¶¶ 7, 9). In short, the most probative witnesses and evidence in this dispute are in the Western District of Wisconsin, not Kansas.

### C. DFA Does Not Dispute That Wisconsin Law Governs Two Of Its Three Claims, Missouri Law Governs the Remaining Claim, and Kansas Law Governs Zero Claims.

The section 1404(a) factors regarding the substantive law governing the case also weigh strongly in favor of venue in the Western District of Wisconsin. As discussed in detail in Foremost's opening memorandum, Wisconsin law governs two of DFA's claims, with Missouri law governing the remaining claim. (Kansas Action, Dkt. 6, at 13-14). DFA does not dispute this in its opposition brief. Rather, DFA confuses the application of the venue factors at issue by claiming that Wisconsin, Missouri, and Kansas all have adopted the Uniform Commercial Code, and suggesting in conclusory fashion that the case involves "relatively simple legal issues." However, the disputed issues in this case do not involve rote application of UCC provisions, but rather determination of whether performance under the Supply Agreements is excused (1) under the contractual terms, (2) the doctrine of commercial impracticability, and (3) the doctrine of frustration of purpose all as applied to the novel and unprecedented COVID-19 pandemic and the dairy industry in Wisconsin and Michigan.

DFA fails to argue that the Wisconsin, Missouri, and Kansas standards do ***not*** differ in application of the common law doctrines of commercial impracticability and frustration of purpose. And given the extraordinary nature and effects of the Covid-19 pandemic, application of these common law doctrines to the unique facts and issues here may very well give rise to novel questions under Wisconsin and Michigan law. And as long as there is a "*possibility* of the existence of questions arising in the area of conflict of laws," which may very well be the situation here given the unprecedented COVID-19 pandemic, this factor weighs in favor of venue in Wisconsin – the state whose law is applicable to most of the claims in the case. *See Boilermakers*, 2010 U.S. Dist. LEXIS 54586, at *19 (citations omitted) (noting that among the

28 U.S.C. § 1404(a) factors include "the advantage of having a local court determine questions of local law,"[3] and "the *possibility* of the existence of questions arising in the area of conflict of laws")(emphasis added)).

DFA effectively concedes that the venue for this dispute should indeed be the Western District of Wisconsin when DFA acknowledges (as it must) that "[g]enerally, courts prefer that an action be heard by the court which sits in the state that provides the substantive governing law."  (Kansas Action, Dkt. 9, at 7) (citing *Emplrs. Mut. Cas. Co.*, 618 F.3d at 1170).  DFA merely argues that this factor is somehow entitled to "less weight" in this case (which Foremost disputes), but the factor nevertheless weighs in favor of venue in Wisconsin, and the "most important factor" – convenience of the witnesses – still strongly weighs in favor of venue in Wisconsin, as discussed, *supra*.

### D. Foremost is More Akin to a "Natural Plaintiff" than DFA in this Dispute.

In its opening brief, Foremost explained that it is actually positioned as the "natural plaintiff" here because it bears the burden of showing that its non-performance of the three subject Supply Agreements was temporarily excused pursuant to Section 13 of the Greenville Contract and/or by operation of the common law doctrines of commercial impracticability and frustration of purpose.  (*See* Kansas Action, Dkt. 6, at 15).  DFA asserts in response that the issues on which Foremost bears the burden are merely affirmative defenses.  DFA's response, however, misses the point.  In the context of determining venue, the concept of the "natural plaintiff" has significance in that it generally corresponds with the party who must marshal the

---

[3] DFA contradicts its own position on this subject when arguing that "[the District of Kansas] is better equipped to handle the issues concerning Missouri law," due to Missouri's relative proximity to Kansas. (*See* Kansas Action, Dkt. 9, at 8).  If that is the case, then *a fortiori* the Western District of ***Wisconsin*** is best equipped to handle issues of ***Wisconsin*** law.

7

evidence and come forward with the proof necessary to satisfy the elements of a claim or defense. An underlying assumption is that it will be more efficient, resourceful, and cost-effective to adjudicate the dispute in the venue that the "natural plaintiff" selects because that is likely the location of evidence that the "natural plaintiff" will use to attempt to satisfy its burden of proof.

Here, DFA does not and cannot contest that the sole disputed issue regarding each of the three Supply Agreements is whether Foremost's non-performance was temporarily excused. As to this dispositive issue, it is Foremost who has the burden of proof and is positioned as the "natural plaintiff." And the underlying assumption regarding the "natural plaintiff's" choice of venue proves true here - that it will be more efficient, resourceful, and cost-effective to adjudicate the dispute in the Western District of Wisconsin because the evidence that Foremost will use to satisfy its burden of proof is located there.

Moreover, there is no bright line rule that a plaintiff in a declaratory judgment action who carries the burden of proof as to one or more affirmative defenses cannot be properly considered the "natural plaintiff." Indeed, the Declaratory Judgment Act exists precisely to provide litigants like Foremost the ability to bring claims as a plaintiff to clarify their rights and obligations – such as whether non-performance under the Supply Agreements is excused – without waiting until an adversary should see fit to begin action after the damage has accrued. *See United States v. Fisher-Otis Co.*, 496 F.2d 1146-1151 (10th Cir. 1974) ("The purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into violations of law or a breach of duty"); *Great Lakes Reinsurance, PLC v. Hayden*, No. 12-1472, 2013 U.S. Dist. LEXIS 70899, at *8 (D. Kan. May 20, 2013) (noting that the Declaratory Judgment Act "enables parties uncertain of their legal rights to seek a declaration of rights prior to injury," and allows parties to

"clarify the legal relationship" between them) (citations omitted); *see also W. Cas. & Surety Co. v. Teel*, 391 F.2d 764, 766 (10th Cir. 1968) ("courts should not be deterred from giving full force and effect to the purpose of the Declaratory Judgment Act") (internal quotation omitted).

Accordingly, the nature of the dispute in both Foremost's declaratory judgment claims in the Wisconsin Action and DFA's claims in the Kansas Action, in which Foremost bears the burden of proof on the disputed issues, renders Foremost most akin to a "natural plaintiff" in this dispute. Such status further weighs in favor of transfer to the Western District of Wisconsin.

### E. The Interests of Justice Weigh in Favor of Venue in the Western District of Wisconsin.

DFA concedes that both (1) the median time from civil case filing to trial and (2) from civil case filing to disposition in the Western District of Wisconsin are shorter than in the District of Kansas.[4] (Kansas Action, Dkt. 9, at 10-11). Therefore, the interests of judicial economy, relieving docket congestion, and reducing administrative burdens weigh in favor of transfer to the Western District of Wisconsin, especially considering that the venue issue for this dispute already has been fully briefed before Judge Conley since November 20, 2020. (*See* Kansas Action, Dkt. 6, at 3 (citing briefing schedule in Wisconsin Action); Wisconsin Action, Dkt. 14 (DFA's reply brief filed in Wisconsin Action)).

### II. The First-to-File Rule Merits Dismissal of the Kansas Action, and the Wisconsin Action was not an Improper Anticipatory Filing.

Application of the first-to-file rule further points in favor of the Western District of Wisconsin as being the proper venue for this case, for the reasons discussed in Foremost's opening memorandum. (*See* Kansas Action, Dkt. 6, at 7-9). The parties do not dispute that

---

[4] Foremost respectfully submits that, in this context, the (1) median number of cases per judge and (2) average weighted filings per judge data is less probative than the median time from filing to (1) trial and (2) disposition statistics when comparing docket congestion per district, because the median time statistics provide a more precise indication of the amount of time a case will take in the respective districts.

9

Foremost filed the Wisconsin Action prior to DFA filing the Kansas Action; thus, Foremost was first-to-file. (Wisconsin Action, Dkt. 1; Wisconsin Action, Dkt. 8, at 3; Kansas Action, Dkt. 1). Therefore, the Kansas Action should be dismissed.[5]

No exception to the first-to-file rule applies here. While DFA has argued that the anticipatory filing exception to the first-to-file rule compels dismissal of the Wisconsin Action, this argument fails because Foremost's complaint in the Wisconsin Action does not qualify as an improper anticipatory filing.

DFA has erroneously implied that any situation in which a declaratory judgment action is filed with knowledge that the other party potentially might seek to file a claim for coercive relief merits application of the anticipatory filing exception. However, under DFA's interpretation, *every* declaratory judgment action necessarily would merit application of the anticipatory filing exception. Every declaratory judgment action plaintiff, in a sense, anticipates that the defendant might file a lawsuit for coercive relief. Indeed, allowing parties to clarify their rights in such circumstances through "an early adjudication without waiting until an adversary should see fit to begin action after the damage has accrued" is precisely the purpose of the Declaratory Judgment Act. *Quad/Med Claims, LLC v. Liberty Mut. Ins. Co.*, No. 2013 U.S. Dist. LEXIS 136580, at *12-13 (E.D. Wis. Sept. 24, 2013) (citation omitted).

The issue under the anticipatory filing exception is not whether Foremost anticipated that DFA might file suit against Foremost, but rather whether Foremost made an *improper* anticipatory filing, *i.e.*, an anticipatory filing for purposes of bad faith, procedural fencing, or

---

[5]DFA has cited *Rezac Livestock Comm'n Co. v. Dinsdale Bros.*, No. 15-cv-04958, 2016 U.S. Dist. LEXIS 128115, at *15-16 (D. Kan. Sept. 16, 2016) in arguing that the parties will have to start all over if the Wisconsin Action is dismissed. However, *Rezac* is inapposite, as the court in that case found the first-to-file rule did not apply because there was not "substantial overlap" between all the claims. *Id*. at *15-16.

forum shopping.  *See OMC LLC v. S&E Gourmet Cuts, Inc.*, No. 16-cv-833-wmc, 2017 U.S. Dist. LEXIS 128581, at *7 (W.D. Wis. Aug. 14, 2017) (noting that district courts may exercise their discretion to apply exceptions to the first-to-file rule when "the wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum") (citation omitted).  Specifically, a filing may be closely scrutinized as a possible improper anticipatory filing if the first-filed case is a declaratory judgment action "filed under threat of an imminent suit for the purpose of avoiding litigation in another forum," "used as a tool aimed solely a[t] wresting the choice of forum from the 'natural plaintiff,'" or "brought in the face of clear threats of suit."  *Kurakyn Holdings, Inc. v. Just In Time Distrib. Co.*, 693 F. Supp. 2d 897, 901 (W.D. Wis. 2010) (declining to dismiss first-filed action) (citations omitted).

Here, Foremost's Complaint did not constitute an anticipatory filing.

First, as discussed above and in its earlier memorandum, Foremost is actually the "natural plaintiff."

Second, DFA never made a *clear or imminent* threat to sue Foremost, much less in the District of Kansas.  Rather, DFA sent Foremost two demand letters noting that it preferred not to litigate but did not waive its right to do so.  (Wisconsin Action, Dkt. 1-2, at 3; *see also* Wisconsin Action, Dkt. 1-1).  DFA never informed Foremost that it would file a lawsuit by a specific date if Foremost did not comply with DFA's demands by a certain date.  (Wisnefski Decl., Exhibit 1, ¶ 2).  Nor did DFA threaten to sue Foremost by attaching a draft complaint to a demand letter.  (Wisnefski Decl., Ex. 1, ¶ 2; Wisconsin Action, Dkt. 1-1; 1-2); s*ee Placon Corp. v. Sabert Corp.*, No. 14-cv-587, 2015 U.S. Dist. LEXIS 8181, at *3-4 (W.D. Wis. Jan. 23, 2015) (party attached a draft complaint to cease and desist letter, and warned that it would file

11

complaint in a specific district); *Nacogdoches Oil & Gas, LLC v. Leading Sold., Inc.*, No. 06-25511, 2007 U.S. Dist. LEXIS 60867 (D. Kan. Aug. 17, 2007) (party enclosed draft complaint to cease and desist letter).

Third, and most importantly, Foremost's Complaint is proper because Foremost initiated litigation in the most appropriate venue for litigation of this dispute, as discussed, *supra*. This is the opposite of procedural fencing or solely seeking to wrest the choice of forum from the natural plaintiff. To the contrary, one might deem the Kansas Action as an improper attempt to secure venue in a preferred forum rather than the forum most convenient to the witnesses and in the interest of justice. Indeed, DFA's opposition brief fails to present any factual basis supporting a position that the District of Kansas is the most appropriate venue for this dispute; instead, DFA merely notes that it is now headquartered in Kansas, and that various members of the finance, management, and accounting teams – who are immaterial to this dispute – are located in Kansas. (Kansas Action, Dkt. 1, ¶ 6 (alleging that DFA is now headquartered in Kansas as the sole allegation in support of venue)).

While the anticipatory filing exception seeks to prevent circumstances in which a party tries to secure forum in an improper venue, here DFA paradoxically invokes the anticipatory filing exception in an attempt to move this dispute from the most appropriate venue – Wisconsin – to a venue with no connection to this dispute beside the fact that it is DFA's headquarters – Kansas.[6] DFA's desire to litigate this dispute in its home district[7] is dramatically outweighed by

---

[6] Adoption of DFA's argument would mean that any time a party sues for declaratory relief, the defendant can then file a coercive lawsuit in another forum and win its preferred venue based on the anticipatory filing exception, thus circumventing the traditional venue analysis. Such a rule would invite mischief and allow the anticipatory filing exception to swallow both the first-to-file rule and the traditional consideration of proper venue. Foremost respectfully requests that this Court decline to adopt DFA's novel, proposed "first-to-threaten" rule. *See Medspring Grp., Inc. v. Atlantic Healthcare Grp., Inc.*, No. 05-cv-115, 2006 U.S. Dist. LEXIS 13443, at *12 (D. Utah March 6, 2006) (expressing concern that the

the convenience and accessibility of the witnesses (who primarily are located in Wisconsin and districts closer to Wisconsin than Kansas), this Court's familiarity with the governing Wisconsin substantive law, Foremost's status as the "natural plaintiff," and judicial economy.  The Wisconsin Action was filed first, Wisconsin bears the strongest factual connection to this case, and DFA has the ability to assert the same claims brought in the second-filed Kansas Action as counterclaims in the Wisconsin Action.  Therefore, no purpose exists for the Kansas Action aside from DFA's desire to forum-shop, and the Kansas Action should be dismissed.

## **CONCLUSION**

The parties agree that this case should be stayed pending resolution of a fully briefed motion regarding venue in the Wisconsin Action.  Nevertheless, should occasion arise for this Court to rule on Foremost's motion to dismiss or to transfer venue, Foremost reiterates that the Kansas Action should be dismissed under the Tenth Circuit's first-to-file rule and, alternatively, transferred under 28 U.S.C. § 1404(a), because Wisconsin serves as the proper venue for litigation of the dispute between the parties.  The Western District of Wisconsin serves as the most practical and appropriate forum for litigation of this dispute between Foremost and DFA. The convenience of the most material witnesses, the location of the most probative evidence, and

---

exception to the first-to-file rule disfavoring preemptive anticipatory filings "would simply turn the first-to-file rule into the first-to-threaten rule," essentially replacing a "race to the courthouse" with a "race to the post office" (to first send a demand letter)) (quoting *Ontel Prods. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1152 (S.D.N.Y. 1995)).  Such a rule would fundamentally undermine Congress' decision to enact the Declaratory Judgment Act for the purpose of allowing parties to clarify their rights rather than requiring them to endure the cloud of a threatened potential litigation at an indefinite time.

[7]Comparison of the parties' respective complaints in the Wisconsin and Kansas Action suggests that the party who raced to the courthouse was DFA, *after* Foremost filed the Complaint in the Wisconsin Action, so that DFA could bolster its anticipatory filing exception argument by minimizing the temporal proximity between the two complaints.  Foremost's Complaint, which contains 14 pages and 59 paragraphs of allegations, is far more detailed than DFA's 6-page, 28-paragraph skeletal Complaint in the Kansas Action.  *Compare* Wisconsin Action, Dkt. 1 *with* Kansas Action, Dkt. 1.

the application of the substantive law governing most of the claims all reveal Wisconsin to be the proper venue for resolution of the case. Moreover, principles of comity between federal district courts, judicial economy, and the first-to-file rule independently merit this case being heard by Judge Conley in the Western District of Wisconsin. Therefore, for the foregoing reasons, Foremost respectfully requests that this Court stay the Kansas Action pending Judge Conley's decision of the pending motion regarding venue in the Wisconsin Action. If this Court, however, is inclined to decide the issue of venue, then the Kansas Action should be dismissed under the first-to-file rule, or, alternatively, transferred under 28 U.S.C. § 1404(a) to the Western District of Wisconsin.

Dated this 2nd day of December, 2020    **ARMSTRONG TEASDALE LLP**

By: _s/ David A. Jermann_____
    David A. Jermann
    Armstrong Teasdale LLP
    2345 Grand Blvd.
    Kansas City, MO 64108
    Phone: 816.221.3420
    Fax: 816.221.0786
    djermann@atllp.com

Attorney for Defendant Foremost Farms USA, Cooperative

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to the following:

    Robert J. Hoffman
    Timothy J. Davis
    Bryan Cave Leighton Paisner, LLP - KCMO
    One Kansas City Place
    1200 Main Street, Suite 3800
    Kansas City, MO 64105
    rjhoffman@bclplaw.com
    Tim.davis@bclplaw.com

                                                                  *s/ David A. Jermann*